IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KATRINA HAMPTON, | * | |
|     Plaintiff, | * | |
| v. | * | Civ. No. DLB-22-1712 |
| WELLS FARGO BANK, N.A., *et al.*, | * | |
|     Defendants. | * | |

**MEMORANDUM OPINION**

Katrina Hampton claims that Wells Fargo Bank, N.A. ("Wells Fargo") and two officers of Wells Fargo & Company, Charles W. Scharf and Michael P. Santomassimo ("the individual defendants"), owe her damages for violating federal and state law in connection with their efforts to get her to make mortgage payments. ECF 3. Wells Fargo moved to dismiss Hampton's amended complaint for failure to state a claim. ECF 10. The individual defendants moved to dismiss for lack of personal jurisdiction, or alternatively, for failure to state a claim. ECF 14. The matter is fully briefed. ECF 10-2, 14-2, 17, 18, 19. No hearing is necessary. Loc. R. 105.6. For the reasons below, the Court grants the individual defendants' motion to dismiss for lack of personal jurisdiction and Wells Fargo's motion to dismiss for failure to state a claim.

**I.    Background**

Hampton, who is self-represented, appears to allege the following facts. Sometime before November 2011, she took out a mortgage from Wells Fargo. ECF 3, at 10 ¶¶ 1–3. Around November 1 of that year, Wells Fargo began notifying her that she was behind on her payments. *Id.* at 10 ¶ 1. At some point around that time, she "properly and timely [r]escinded [the mortgage loan] via U.S. Mail within the legal time frame outlined by the Truth in Lending Act." *Id.* at 10 ¶ 3. Wells Fargo did not acknowledge her notice. *Id.*

A decade passed. Then, on March 16, 2022, Wells Fargo sent Hampton a statement requesting a mortgage payment. ECF 3-2, at 5. On April 12, 2022, Hampton mailed Scharf and Santomassimo a letter she titled, "Notice of Dispute Request for Verification & Validation of Mortgage Debt." ECF 3-2, at 5. On April 18, 2022, Wells Fargo sent Hampton another payment request. ECF 3-3, at 2. In response, Hampton mailed the individual defendants another "Verification & Validation" letter. *Id.* On May 10, 2022, Wells Fargo and the individual defendants declined to provide the affidavit Hampton's letters demanded. ECF 3-4, at 2. On May 31, 2022, Hampton mailed Scharf and Santomassimo a letter she dubbed a "Notice of Noncompliance of Request for Verification & Validation of Mortgage Debt & Affidavit of Default." *Id.* The letter declared that Wells Fargo's failure to respond to her requests for sworn verification and validation of the debt is a "tacit commercial acquiescence and agreement" that the bank "waives all claims and defenses" with regard to collection on the mortgage. ECF 3, at 10 ¶ 4; ECF 3-4, at 3.

At several points, Hampton requested in writing that Wells Fargo cease to contact her without her consent, but Wells Fargo contacted her by email and by phone anyway, including calls on June 6, 2022, June 15, 2022, and July 7, 2022. ECF 3, at 16 ¶ 1.

On April 25, 2022—in the midst of this correspondence—Hampton obtained credit reports from Equifax, Experian, and Transunion. *Id.* at 10 ¶ 5. Each report mentioned a debt to Wells Fargo. *Id.* The next day, Hampton disputed that debt with each agency.[1] *Id.* On July 25, 2022, the agencies informed her that after conducting an investigation with Wells Fargo, they had

---

[1] Hampton alleges she filed each dispute on April 26, 2015, seven years earlier, but because she describes herself as "immediately fil[ing] disputes with the credit rating agencies" over the April 25, 2022 reports, *id.*, the Court understands her to say she filed each dispute the day after she received the credit reports.

concluded that she did, in fact, have an outstanding debt with Wells Fargo. *Id.* As a result of this debt appearing on her credit reports, Hampton was denied job opportunities and credit, *id.* at 13 ¶¶ 9–10, she had higher interest rates and higher car insurance premiums, and she experienced insomnia, embarrassment, and anxiety, *id.* at 15 ¶ 5.

On July 12, 2022, Hampton filed a complaint in this Court, seeking actual and punitive damages against Wells Fargo, Scharf, and Santomassimo. ECF 1. On August 29, she filed an amended complaint. ECF 3. Hampton mentions any number of provisions of constitutional, statutory, and common law, both federal and state, but when she enumerates her claims against the defendants, she lists just five counts. ECF 3, at 11–16. The Court follows Hampton's lead and interprets her complaint to advance claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Maryland Consumer Protection Act, Md. Code Ann., Com'l Law § 13-101 *et seq*. ("MCPA"), and Maryland common law.[2]

On November 3, 2022, Wells Fargo moved to dismiss Hampton's amended complaint for failure to state a claim upon which relief can be granted. ECF 10. On November 14, 2022, Scharf

---

[2] Hampton also claims Wells Fargo is committing federal crimes such as mail fraud, bank fraud, aggravated identity theft, and conspiracy to violate her civil rights. ECF 3, at 10 ¶ 8. As a private citizen, Hampton has no right or ability to prosecute federal crimes. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

3

and Santomassimo moved to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim. ECF 14. Hampton has opposed both motions. ECF 17.[3]

## II.     Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to include in their complaint a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of that statement. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); Fed. R. Civ. P. 12(b)(6). A court will deny a Rule 12(b)(6) motion if, but only if, the complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In ruling on the motion, a court accepts the well-pleaded allegations as true, *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021), but "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses," *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). A complaint that merely recites the elements of the cause of action or couches legal conclusions as facts cannot overcome a Rule 12(b)(6) motion. *See Twombly*, 550 U.S. at 555; *Turner*, 930 F.3d at 644. In resolving a Rule 12(b)(6) motion, a court

---

[3] In her opposition, Hampton asserts several additional factual allegations, ECF 17, at 1, and adds an exhibit, ECF 17-1. She argues she does not owe Wells Fargo anything. She claims she rescinded the mortgage agreement and Wells Fargo has waived its status as a creditor by failing to perform various statutory and U.C.C. duties. She goes even further: She claims the defendants are now the debtors and she the creditor. To the extent Hampton alleges facts in her opposition brief that were not included in her pleading, the Court cannot consider them to determine whether she has stated a claim. "An opposition is not a proper vehicle for amending a complaint." *Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015) (citing *Saunders v. Putnam Am. Gov't Income Fund,* No. JFM-04-560, 2006 WL 1888906, at *2 n.2 (D. Md. July 7, 2006)). Even if the Court were to grant leave to amend, these additions do not cure the defects in her pleading and would not change the Court's reasoning or conclusions.

may consider "documents that are explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted); *see* Fed. R. Civ. P. 10(c).

A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction challenges the propriety of a particular court's exercise of power over a particular defendant. *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020). The inquiry for a Rule 12(b)(2) motion proceeds along similar lines as the inquiry for a Rule 12(b)(6) motion: "[T]he district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.,* 935 F.3d 211, 226 (4th Cir. 2019). But there is one significant difference: "[A] court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (citing *Grayson v. Anderson*, 816 F.3d 262, 269 (4th Cir. 2016)). Throughout, the court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inference for the existence of jurisdiction." *Id.* at 350 (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). Nevertheless, "[w]hen personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins*, 935 F.3d at 226.

The Court has a duty to construe the complaint of a *pro se* litigant liberally. *See Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, that duty neither obligates nor permits the Court to fill in factual or legal gaps in the complaint. *See Derek N. Jarvis v. Geico Ins. Co.*, No. RWT-09-2638, 2009 WL 3833964, at *1

(D. Md. Nov. 13, 2009) (citing *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990)).

### III. Discussion

Even construing the amended complaint liberally, the Court finds that Hampton has not pleaded facts that establish the Court has personal jurisdiction over Scharf or Santomassimo. The Court also finds that she has not stated a claim against Wells Fargo entitling her to relief.

### A. Personal Jurisdiction

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *See* Fed. R. Civ. P. 4(k)(1)(A); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). "[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103(b), reaches as far as the Due Process Clause permits, *see Carefirst*, 334 F.3d at 396 (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (1977)). Even so, the Maryland Supreme Court has clarified that it is not "permissible to simply dispense with analysis under the long-arm statute." *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006). The fact that the long-arm statute extends as far as due process permits does not mean that the inquiry has only one step. Rather, it means that at the first step—interpreting the statute—"to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due

process clause." *Dring v. Sullivan*, 423 F. Supp. 2d 540, 545 (D. Md. 2006) (quoting *Joseph M. Coleman & Assocs., Ltd. V. Colonial Metals*, 887 F. Supp. 116, 118 n.2 (D. Md. 1995)).

The exercise of personal jurisdiction over a nonresident defendant accords with due process if the court has either general jurisdiction or specific jurisdiction. *See Carefirst*, 334 F.3d at 397. A federal district court has general jurisdiction over a defendant if the defendant's conduct in the state is not the basis for the suit, *see id.*, and the defendant's connections to the state are "so constant and pervasive as to render it essentially at home in the forum State," *Fidrych*, 952 F.3d at 132 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). By contrast, a federal district court has specific jurisdiction over a nonresident defendant if "the defendant has purposefully availed itself of the privilege of conducting activities in the state," "the plaintiff['s] claims arise out of those activities directed at the state," and "the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397.

The Court does not have general jurisdiction over Scharf or Santomassimo. Hampton does not allege that they reside or work in Maryland. And in fact, they do not. Scharf resides in New York and Santomassimo resides in New Jersey. ECF 6. Both work in New York. ECF 14-3; ECF 14-4. Hampton also does not allege that the individual defendants have any regular contacts with the state of Maryland, let alone "constant and pervasive" ones. *See Fidrych*, 952 F.3d at 132. There is simply no basis for general jurisdiction over Scharf or Santomassimo.

The Court does not have specific jurisdiction over Scharf or Santomassimo either. Maryland's long-arm statute limits specific jurisdiction to cases where the cause of action "aris[es] from any act enumerated in the statute itself." Md. Code Ann., Cts. & Jud. Proc. § 6-103(a). The statute authorizes jurisdiction over a party who directly or by an agent:

    (1) Transacts any business or performs any character of work or service in the State;

    (2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

*Id*. § 6-103(b). The first and fourth statutory bases for specific jurisdiction seem like the closest fits, but Hampton does not plead the elements of either. At no point in the complaint does she identify any business either individual defendant conducted in Maryland, let alone that they regularly do business in the state. Nor does she allege any conduct by either individual defendant that took place in Maryland or that involved contact with Maryland. Hampton alleges that the two did not respond to her requests that they verify the debt at issue. But the exhibits she attaches to her complaint show that she addressed those letters to them at an address in San Francisco, California. ECF 3-2, 3-3. That she might have mailed the letters to them from Maryland does not satisfy the long-arm statute. Hampton claims that Santomassimo failed to ensure that Wells Fargo followed Generally Accepted Accounting Principles, but she does not allege that any act or omission of his involved in that failure took place in Maryland. Hampton claims that Scharf and Santomassimo engaged in negligent hiring or supervision, but she does not allege any specific conduct by either man in or reaching Maryland. In the absence of any specific allegation that Scharf or Santomassimo had any contact with Maryland or engaged in any conduct in Maryland, the complaint does not establish specific jurisdiction over them.

Without general or specific jurisdiction over Scharf or Santomassimo, the Court must grant their motion to dismiss Hampton's claims against them for lack of personal jurisdiction. The claims are dismissed without prejudice. *See Pandit v. Pandit*, 808 Fed. App'x 179, 183 n.3 (4th Cir. 2020) (explaining that dismissal for lack of personal jurisdiction is without prejudice "because such a dismissal does not dismiss the case on the merits").

### B. Sufficiency of the pleadings

#### 1. Fair Credit Reporting Act

Hampton appears to claim that Wells Fargo violated three provisions of the FCRA. First, she claims that Wells Fargo violated section 1681s-2(a). ECF 3, at 11–13. In brief, that provision prohibits furnishing a credit reporting agency with information that one knows or has reason to know is inaccurate. *See* 15 U.S.C. § 1681s-2(a)(1)(A). It expressly bars providing inaccurate information that a consumer has properly notified the furnisher is inaccurate. *See id.* § 1681s-2(a)(1)(B). And the provision also states that if a consumer disputes the accuracy of a particular piece of information, the person who initially provided that information to the agency may not furnish that information again without also noting that the consumer disputes it. *See id.* § 1681s-2(a)(3).

Hampton seems to allege that Wells Fargo falsely reported to the three major consumer credit agencies—Equifax, Experian, and Transunion—that she owed the bank a debt that she did not in fact owe it, that she had notified them that she did not owe that debt, and that she had disputed that debt with them. But even if Hampton had plausibly alleged all of that, her claim would still come up short. The reason: "There is no private right of action under § 1681s-2(a)." *Lovegrove v. Ocwen Home Loans Servicing, L.L.C.*, 666 F. App'x 308, 313 (4th Cir. 2016) (citing

9

15 U.S.C. § 1681s-2(c), (d); *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 149 (4th Cir. 2008)). She cannot bring any section 1681s-2(a) claim, no matter how well pleaded.

Second, Hampton claims that Wells Fargo violated section 1681s-2(b). Under that provision, if a consumer notifies a credit reporting agency that they dispute the completeness or accuracy of particular information and the agency notifies the person who furnished the information of the consumer's dispute, the furnisher must investigate the claim, report the results of the investigation to the agency, notify any other credit reporting agencies to which the furnisher had provided that information of the incompleteness or inaccuracy, and revise the information accordingly. *See* 15 U.S.C. § 1681s-2(b). As a result, to state a claim under section 1681s-2(b), a plaintiff must plead "(1) that [they] notified the CRAs of the disputed information; (2) that the CRAs notified [the defendant] of the dispute; and (3) that [the defendant] then failed to investigate and modify the inaccurate information." *Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 581 (D. Md.), *aff'd*, 623 F. App'x 94 (4th Cir. 2015). Even then, the plaintiff also must plead facts sufficient to make it plausible that the defendant acted willfully, *see* 15 U.S.C. § 1681n, or negligently, *see id.* § 1681o.

Hampton arguably alleges the first two elements. She asserts that the April 25, 2022 credit reports she received from Experian, Equifax, and Transunion inaccurately reported that she owed a debt to Wells Fargo, that she notified them that she disputed that debt, and that the agencies later notified her that they had found her dispute meritless "after conducting an investigation with the credit furnisher (WELLS FARGO BANK, N.A., debt collector)." ECF 3, at 10 ¶ 5.

But her efforts fall short when it comes to adequately alleging Wells Fargo's failures and mental state. Hampton simply asserts that "WELLS FARGO BANK, N.A. failed to delete information found to be inaccurate and erroneous, and or [sic] failed to properly investigate Ms.

Hampton [sic] disputes," that "WELLS FARGO BANK, N.A. failed to conduct a proper and lawful investigation," and that Wells Fargo did so "willfully" or by performing "negligent acts." *Id.* at 12–13.  These conclusory "recitation[s]" of the third element of a 1681s-2(b) claim and the required mental state under section 1681n or section 1681o are not enough to survive a motion to dismiss for failure to state a claim.  *See Twombly*, 550 U.S. at 555; *see also Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 349–50 (4th Cir. 2013).

Third, Hampton claims that Wells Fargo violated section 1681e(b), which requires any "consumer reporting agency" that "prepares a consumer [credit] report" to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  But Hampton does not plead any particular facts in support of that claim.  Nor does she even plead that Wells Fargo is a "consumer reporting agency" within the meaning of the statute.  To the contrary, she alleges that Wells Fargo is a "credit furnisher" who provides data to the consumer reporting agencies.  ECF 3, at 11–12.  Here, too, the complaint comes up short.

Even construing Hampton's complaint liberally, she has failed to state a claim entitling her to relief under FCRA.  Her claim is dismissed.  Dismissal is with prejudice as to the §§ 1681s-2(a) and 1681e(b) claims because amendment would be futile.  Dismissal is without prejudice as to the § 1681s-2(b) claims.

### 2. Fair Debt Collection Practices Act

Hampton also claims that Wells Fargo violated the FDCPA.

> To succeed on a[n] FDCPA claim a plaintiff must demonstrate that (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.

11

*Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013).  Hampton plainly does not plead the second element.

Under the FDCPA, a "debt collector" is "(1) a person whose principal purpose is to collect debts; (2) a person who regularly collects debts owed to another; or (3) a person who collects its own debts, using a name other than its own as if it were a debt collector," save anyone who meets one of these definitions but falls into one of several subsequent exclusions.  *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016).

Hampton declares that Wells Fargo is a debt collector in the eyes of the FDCPA, ECF 3, at 15, but her factual allegations do not support that conclusory legal claim.  Nowhere does Hampton allege that Wells Fargo is primarily in the business of collecting debts—ruling out the first option.  Nor does she try the second option—alleging that Wells Fargo is a "debt collector" because it regularly collects debts owed to others.  Not only does Hampton never say that Wells Fargo "regularly collects debts owed to others and was doing so here," *Henson*, 817 F.3d at 137, but her factual allegations consistently belie the conclusion.  Consider her opening "Factual Allegations":

> On or about November1, 2011 and on several occasions after, Ms. Hampton received a dunning notice from WELLS FARGO BANK, N.A.
>
> The dunning notices make numerous claims by the WELLS FARGO BANK, N.A., regarding an alleged DEBT, Consequently, Ms. Hampton was without specific knowledge and evidence that supported WELLS FARGO BANK, N.A.'s claims and allegations.
>
> The Mortgage Loan was properly and timely Rescinded via U.S. Mail within the legal time frame outlined by the Truth in Lending Act.  However, Wells Fargo Bank, N.A. did not acknowledge the Notice.

ECF 3, at 10 ¶¶ 1–3.  The gist of these allegations is that Wells Fargo tried to collect payments from her on a mortgage that she took out from it, even after she had rescinded the agreement.

Similarly, Hampton later asserts that the mortgage agreement she made with Wells Fargo was invalid on a different ground: "A breach occurred due to the fact that Wells Fargo Bank, N.A. failed to disclose the outlined facts listed above in their Mortgage Agreement prior to soliciting applicant to become bound by it." *Id.* at 11 ¶ 9.  There are more allegations like these. *See, e.g.*, *id.* at 11 ¶ 14 (alleging mortgage was "altered and forged").  They have a common factual premise: that Wells Fargo was attempting to collect on a debt that it believed Hampton owed to Wells Fargo itself.  By Hampton's own lights, Wells Fargo was not attempting to collect on a debt owed to someone else.  That means she has not alleged under the first or second option that Wells Fargo was acting as a debt collector under the FDCPA.

That leaves the third and final option: pleading that Wells Fargo is a debt collector because it attempted to collect using a name other than its own.  Once again, Hampton's complaint does not provide enough.  To be sure, in a different portion of her complaint, Hampton writes, "You consented to USC 15 1692 (j) whereby you furnished a deceptive form on or about May 1, 2022 knowing that such a form would be used to create the false belief in me that a person other than the creditor was participating in an attempt to collect the debt." *Id.* at 14 ¶ 7.  But even if that opaque and conclusory sentence is a factual allegation that Wells Fargo attempted to collect from her under the guise of being someone else, the sentences that come next render that allegation implausible:

> You used a form, which contained formulas, or an established set of words used in a ceremony or ritual; the form denoted a legal form that would not apply to me as a consumer.  It is unlawful to furnish a form with words used in legal proceeding that imply religious beliefs . . . Your Legal form was clearly a form of religious ceremony, which can be construed as a ritual, and I do not practice rituals.  The formulas within the form also created symbols in my mind that were demeaning to my character and made me feel as if I was being forced to be a part of a religion that was not my own, impeding my freedom of religion.

13

*Id*.  From these allegations, the Court cannot plausibly infer that Wells Fargo collected its own debt in the name of someone else.  For that reason, Hampton has not adequately pleaded the third pathway for establishing that Wells Fargo is a debt collector under the FDCPA.

All told, Hampton has failed to plead facts sufficient to make it plausible that Wells Fargo is, and was acting as, a debt collector under the FDCPA.  Since that is a prerequisite to an FDCPA claim, *Stewart*, 859 F. Supp. 2d at 759, she has failed to state a claim under the statute.  Her FDCPA claim is dismissed.  Dismissal is with prejudice because to plead plausibly that Wells Fargo is a debt collector under the FDCPA, Hampton would have to flatly contradict her core contention that Wells Fargo is trying to collect a debt the bank thinks she owes it.

### 3. Telephone Consumer Protection Act

Hampton's last federal claim is that Wells Fargo violated the TCPA.  In relevant part, the TCPA prohibits:

> any person within the United States . . . [from] mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any . . . cellular telephone service . . . or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1)(A)(iii).  To state a claim under section 227(b), "a plaintiff must allege: (1) that the defendant called the plaintiff's cellular telephone; (2) using an automatic dialing system [or prerecorded voice]; (3) without the plaintiff's prior express consent."  *Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 979 (D. Md. 2019) (citing *Hossfeld v. Gov't Emps. Ins. Co.*, 88 F. Supp. 3d 504, 510 (D. Md. 2015)); *see also Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 644–45 (4th Cir. 2018).

Hampton has not alleged the elements of a TCPA claim.  Her factual allegations are, in their entirety, that "[o]n several occasions after the request was made not to contact Ms. Hampton

Wells Fargo N.A. continued to contact her by phone and email without any prior consent. Calls received on 6/6/22, at 3:26PM, 6/15/22 at 4:50PM, 7/7/22 at 8:30PM from the defendants." ECF 3, at 16 ¶ 1. At least two necessary elements of a TCPA claim are missing. Hampton does not allege that Wells Fargo made those calls with an automatic dialer or an artificial or prerecorded voice. Nor does she allege that Wells Fargo called her cell phone or some other line for which Hampton was charged for the call. In consequence, Hampton has failed to state a claim under the TCPA. Her claim is dismissed without prejudice.

### 4. State law claims

All that remain are Hampton's state claims for negligent hiring and supervision and violations of the MCPA. ECF 3, at 13–14. A federal court may exercise supplemental jurisdiction over state law claims like these even after the court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). But a court may decline to exercise supplemental jurisdiction instead. Federal law commits the decision to the court's discretion. *See Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617–18 (4th Cir. 2001). In the exercise of this discretion, courts focus on "the values of judicial economy, convenience, fairness, and comity." *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Hinson*, 239 F.3d 611, 617–18. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n.7.

This is the "usual case." *Id*. Because the remaining claims sound in state law alone, a state court is better suited to hear them. Exercising supplemental jurisdiction would undermine, rather than promote, judicial economy, comity, and fairness to the parties. Having dismissed Hampton's

15

federal claims, the Court declines to exercise supplemental jurisdiction over her state claims. They are dismissed without prejudice.

## IV. Conclusion

The individual defendants' motion to dismiss for lack of personal jurisdiction is granted. Wells Fargo's motion to dismiss for failure to state a claim is granted as well, with prejudice as to the 15 U.S.C. §§ 1681s-2(a) and 1681e(b) claims and FDCPA claims and without prejudice as to the 15 U.S.C. § 1681s-2(b) claims, TCPA claims, and state law claims. A separate order follows.

Date: September 22, 2023

Deborah L. Boardman
United States District Judge